UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JOHN J. ROH,

        Plaintiff,

v.                                  3:07-cv-1901 (CSH)

GEORGE DEVACK,

        Defendant.

**RULING ON PARTIAL MOTION FOR SUMMARY JUDGMENT**

HAIGHT, Senior District Judge:

Plaintiff John J. Roh has filed a six count complaint arising from Defendant George DeVack's failure to pay Plaintiff the $2.85 million that Plaintiff contends Defendant contracted to pay for the purchase of Plaintiff's minority interest in their jointly-owned business. Subject matter jurisdiction is based on diversity of citizenship.[1] (Compl. ¶ 5.) Now pending is Plaintiff John J. Roh's motion pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment on the breach of contract claim (Count Five). Defendant opposes summary judgment on the basis that no enforceable contract was formed between the parties because other terms remained outstanding, and because Plaintiff demanded a purchase price in excess of $3 million after Defendant had accepted the price of $2.85 million. For the reasons stated herein, Plaintiff's Partial Motion for Summary Judgment [Doc. 23] is DENIED.

I.     FACTUAL BACKGROUND

Plaintiff and Defendant are the sole members of OLM, LLC ("OLM"), a Connecticut

---

[1] Plaintiff is a citizen of Illinois. (Compl. ¶ 1.) Defendant is a citizen of Connecticut. (Compl. ¶ 2.)

limited liability company engaged in the business of development and marketing relating to internet websites. Plaintiff is the minority owner of OLM, owning twenty-six percent (26%) of the membership interest of OLM, while Defendant is the majority owner, owning seventy-four percent (74%). In 2004, the parties entered into discussions regarding a possible buy-out by Defendant of Plaintiff's membership interest in OLM. During the negotiations via email, Defendant offered to purchase Plaintiff's minority share of the company for $2 million. (Pl.'s Ex. 1.) Plaintiff counter-offered by proposing to purchase Defendant's majority interest for $9 million. Id. Thereafter, on September 30, 2004, Plaintiff followed up with another email to Defendant, stating in full:

> In the interest of saving time, if you decide not to take my offer [to buy your shares for $9 million], I will go ahead and sell my shares for $2.85 [million], which I believe is a fair compromise.

Id. On November 29, 2004, Defendant responded with an email, stating in full, "I agree to the 2.85 Million. We will get back to you soon with what terms we can offer." Id. However, the transaction was never consummated. Defendant contends that "After my discussions with [Plaintiff] regarding the price that I might pay for his interest in the LLC, I never had any further discussions with him regarding what terms we could offer, as many unresolved issues arose regarding [Plaintiff's] management of the Illinois facility." (DeVack Affid. ¶ 5.)

On April 21, 2005, Plaintiff's counsel sent a letter to Defendant's counsel stating that "documentation for the acquisition of our client's membership interest" still had not been "provided to [Plaintiff's counsel] for review," and informing Defendant that "if the transaction is not completed by May 5, 2005, [Plaintiff] will no longer be willing to sell his interest in OLM, LLC for [$2.85 million]. After May 5, 2005, the purchase price will be an amount in excess of

$3 million." (Def.'s Ex. A to DeVack Affid.)  Defendant states that "The exact amount of the purchase price in excess of $3 million was never disclosed to me and we did not discuss any terms beyond the initial purchase price of $2.85 million." (DeVack Affid. ¶ 8.)

On June 7, 2005, Joseph Convertino, OLM's financial officer, sent an email to Plaintiff informing him that he had "approved sending [Plaintiff] an advance payment of [$100,000] which can be considered as an advance under any future buy-out agreement and/or treated as a distribution and deducted from any amount that may be due to you in the future." (DeVack Affid. ¶ 9; Def.'s Ex. B to DeVack Affid.)

Finally, Plaintiff has attached as an exhibit a letter from Defendant to Plaintiff, dated December 8, 2005, stating, "We are still going to buy your shares and this letter serves as a confirmation of this.  It just needs to happen when we can do it.  There is no need for you to provide us with deadlines as there are no "tactics" involved with the delay and we intend to fully iron out all the issues with you hopefully within the next 90 days." (Pl.'s Ex. 2.)  Defendant responds that this document "is a draft of a letter that was prepared for me but never signed by me and was never sent to [Plaintiff] in connection with our negotiation.  (DeVack Affid. ¶ 6.)  Rather, the unsigned draft letter was produced by Defendant to Plaintiff during discovery.  Id.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d, 265 (1986).  If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e)(2).  In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."  Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995) (citations omitted).  However, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'"  Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also FED. R. CIV. P. 56(e).

III.   DISCUSSION

Plaintiff has failed to demonstrate his entitlement to partial summary judgment on the breach of contract claim.  Because this federal court is sitting in diversity, Connecticut law governs. "Under established principles of contract law, an agreement must be definite and certain

as to its terms and requirements." <u>Augeri v. C. F. Wooding Co.</u>, 173 Conn. 426, 429-430 (1977) (citations omitted); <u>Suffield Dev. Assocs. Ltd. P'ship v. Soc'y for Sav.</u>, 243 Conn. 832, 843 (1998). "It is elementary that to create a contract there must be an unequivocal acceptance of an offer." <u>Bridgeport Pipe Engineering Co. v. DeMatteo Constr. Co.</u>, 159 Conn. 242, 246 (1970). The acceptance of the offer must be "explicit, full and unconditional." <u>Id.</u>, <u>citing</u> <u>Woodbridge Ice Co. v. Semon Ice Cream Corporation</u>, 81 Conn. 479, 487 (1909). The burden is on Plaintiff to prove a "meeting of the minds" with respect to Plaintiff's version of the claimed contract. <u>Id.</u>, <u>citing</u> <u>Lucier v. Norfolk</u>, 99 Conn. 686, 699 (1923). "[A] contract cannot be enforced unless all essential terms have been sufficiently agreed upon." <u>Zielinski v. Heinemann</u>, 2008 U.S. Dist. LEXIS 40885, at *12 (D. Conn. May 21, 2008), <u>citing</u> <u>Glazer v. Dress Barn, Inc.</u>, 274 Conn. 33, 53 & n.16 (2005); <u>Suffield Dev.</u>, 243 Conn. at 843.

Plaintiff maintains that an enforceable contract was formed in the exchange of emails detailed above, but the plain language of the November 29, 2004 email upon which Plaintiff relies militates against granting summary judgment to Plaintiff on that issue. In it, Defendant states, "I agree to the 2.85 Million. We will get back to you soon with what terms we can offer." The email accepts the price term offered by Plaintiff, but clearly contemplates that additional negotiation as to other terms is still required, and advises Plaintiff of such.

Defendant lists the many outstanding terms that, in his view, remained to be resolved, including who would purchase Plaintiff's interest, Defendant or the LLC, the closing date, the payment schedule and manner in which Plaintiff's interest would transfer (assuming the full payment and transfer of ownership would not be completed at closing), the representations and warranties by the parties, their termination rights, the remedies in the event of default,

indemnifications, duties regarding confidentiality and non-competition, determination of choice of law, and so forth. (DeVack Affid. ¶ 7.) The agreement need not have resolved every issue identified by Defendant in order to be binding, as an agreement need not address every conceivable term in order to be enforceable, Zielinski, 2008 U.S. Dist. LEXIS 40885 at *12, citing Glazer, 274 Conn. at 53, and contracts can be enforceable where, unlike here, the missing terms can be determined by "fair implication." Id. at *14, quoting Presidential Capital Corp. v. Reale, 231 Conn. 500, 507-08 (1994) (looking at the pre-contract bargaining between the parties to give context to an otherwise vague agreement). However, it is not common practice to form contracts for $2.85 million business deals on the basis of two sentence emails stating only the purchase price. "[W]here 'the memorandum appears [to be] no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms,' the plaintiff has failed to prove the existence of an agreement." Suffield Dev., 243 Conn. at 843, quoting Westbrook v. Times-Star Co., 122 Conn. 473, 481 (1937). The parties would have reasonably anticipated additional negotiation of terms before an enforceable contract came into being, an understanding which was made explicit when Defendant stated, "We will get back to you soon with what terms we can offer." Furthermore, as a practical matter, it would hamper contract negotiation if expressing agreement to any significant term, such as price, immediately formed a binding contract, even in the face of an express statement, such as the one found in Defendant's email, that other terms remain outstanding.

    Defendant also opposes summary judgment for Plaintiff on the basis that, subsequent to Defendant's acceptance of the $2.85 million price, Plaintiff, acting through his counsel, demanded an unspecified purchase price "in excess of $3 million." (Def.'s Ex. A to DeVack

Affid.)  Plaintiff thereby appears to have sought to re-open negotiation as to the one previously settled term, namely price.  Defendant contends that the parties had no subsequent discussions as to the price or other terms, and that Plaintiff never specified an amount in excess of $3 million.  Plaintiff makes no argument and presents no evidence to the contrary.  In the absence of any further discussion or commitment as to price, Defendant cannot be said to have accepted Plaintiff's revised offer.  Given that the December 8, 2005 draft letter attached as Plaintiff's Exhibit 2 was never actually sent by Defendant to Plaintiff, and was only obtained by Plaintiff during discovery, it cannot have served as an acceptance by Defendant of Plaintiff's offer to sell his interest in the company for an unspecified sum in excess of $3 million.

## IV.     CONCLUSION

For the reasons stated herein, Plaintiff's Partial Motion for Summary Judgment [Doc. 23] is DENIED.  Given that the deadlines in prior scheduling orders have expired, the parties are ordered to confer with each other and submit to the Court on or before October 22, 2009 a joint report setting forth proposed deadlines, by mutual agreement if at all possible, for the remaining phases of this litigation, including a discovery deadline, a dispositive motions deadline, and a trial ready date.

It is SO ORDERED.

Dated: New Haven, Connecticut

     October 14, 2009

                                    /s/  *Charles S. Haight, Jr.*
                                 Charles S. Haight, Jr.
                                 Senior United States District Judge